v. Appellant Jim Ruhl, John G. Fogarty Jr., Nathaniel J. Sippel, Ross B. Seckler, Appellant Martinez, Carrie Lynn J. Kraftopper. Thank you. Mr. Fogarty, you may proceed. Thank you, your honor. May it please the court, my name is John Fogarty and I represent Jim Ruhl, the chairman of the Naperville Township Republican Organization, also referred to herein as the Naperville Township Republican Central Committee. This case arises out of that organization's process for nominating its candidates in its December 1st caucus for the April 2021 local elections. As you all may know, an established party in a township may nominate its candidates by caucus or by primary. The NTRCC, like many, chose to nominate by caucus. And this case really boils down to the conduct of that caucus and the fact that the plaintiffs in this case knew ahead of time that they would not be chosen at the caucus. And they tried to conduct their own separate caucus, and then afterwards bully the regular party into and some of the procedures that were in place due to that crisis in doing so. Before the trial court, now the trial court essentially tried to have it both ways. They ordered that the candidates from the official party caucus, as well as those from the rump group caucus or the parking lot caucus, be certified to the ballot. This was in error for a variety of reasons. And we have identified at least three major respects that present themselves in this appeal. First, the trial court did not have jurisdiction over this matter at all. A challenge to the outcome of a caucus is governed by sections 10-8 and 10-10 of the election code. The legislature provided these provisions, gifting original jurisdiction over matters like this to an electoral board, not to the trial court. All the plaintiffs would have needed to do was to file an objection under section 10-8, and an electoral board could have given them the relief that they sought. No objection was filed here, and so the court consequently has no jurisdiction. Secondly, the trial court allowed the plaintiffs to add defendants who had been properly nominated, not until after the end of the pleadings in the trial case, which was, as we point out, improper in our briefs. In particular, this affected the assessor candidate, Matt Rasche, the most, who had no meaningful opportunity to defend his rights. And then finally, the conduct of the caucus itself. We contend that it was conducted properly, that the key facts, the only ones you should look at are that the proper notice of the date, time, and location was given by the NTRCC, that caucus participants checked in and appointed at the appointed time, and were given instruction as to participation by Zoom or telephone, and were provided a copy of the proposed rules, that at the appointed time, the chairman of the NTRCC, which is Mr. Rule, called the meeting to order, and no other individual did or could have, that the rules were approved unanimously or near-unanimously. The upon the canvas of the organization, who were then certified by the township clerk. The plaintiffs offer a lot of, we would say, less than relevant facts, and a contention that the caucus could not have been conducted by Zoom. We think that we dispatched that fairly well in our briefs, and would be glad to answer additional questions on that. Thank you. Thank you. Your timing was almost impeccable. Well, I set myself there, sir. I have much more to add, but appreciate even the five minutes. Justice Jorgensen, do you have any questions? Yeah, my question is, why can't there be two assessors on the ballot? There can, there can, thank you, Your Honor. There can be, but not from one party. Each party has... Why is that? I mean, what was the trial court thinking? I mean, what was the trial court's basis for concluding that that was appropriate? Well, that's a great question. I think that the trial court simply thought that because no other, the opposing party had not apparently nominated an assessor candidate, that it would be okay in doing so. But the problem, your question kind of gets to the meat of the problem, and that is that a party must, at its caucus, nominate its candidates. It cannot have a sort of competing slate within one particular party, even if the vacancies match up or nearly match up. And then secondly, as we outlined, the candidates who were nominated by the regular party caucus, one for assessor and one for trustee, were not added as defendants in this case, and therefore had no ability to defend their rights, vindicate their rights. And the assessor candidate, particularly, really was needed to have been afforded that, neither really needed to have been afforded that opportunity. And then finally, I think probably to the most, in the most basic sense, the township code references that nominations can't be made for more than one slot per party. Okay, my other question is, you suggested that the trial court had no jurisdiction from the get-go. That's right. And you base that on your position that the entire matter should have gone to the State Board of Elections first? To an electoral board, rather. So it would have been a township electoral board, and the composition is dictated by the election code. Okay, so it's my understanding that they have jurisdiction over matters where the contest is about the outcome of a caucus. That's right. Is that a correct understanding? That is right. Okay, this was not a contest over the outcome, but rather the process of the caucus, was it not? Well, there was a complaint about the process, but ultimately it is about the outcome. Well, that may be the next natural step, but what was at issue is whether, and correct me if I'm wrong, but it's my understanding that the plaintiff's complaint is that the caucus was improper, regardless of the outcome. In other words, they're not challenging that this, I'll call it the Zoom caucus, produced two candidates. Their objection is the process of the caucus was not proper, regardless of the outcome. That is right, Your Honor, but as we cited in our briefs, there are a number of cases in which unhappy candidates are challenging the process of the caucus, and they do so in the context of section 10-8 and 10-10 of the election code. Right, but I don't mean to cut you off, and I'll let you finish, but my point is they can challenge it that way, but are they required to? We would say absolutely yes. I think because the legislature has set forth the manner, yeah, and provides original jurisdiction over these matters. So, you're looking at the language of the statute and you take the position that it is mandatory. It is not you can do it this way or another way, but you must. You must, yes, before an electoral board. Okay, we do. Okay, thanks. I appreciate your answers. You bet. Thank you. Uh, Justice Shostak, do you have any questions? I do. Thank you, Justice McClaren. So, how many names were certified? So, two were properly certified. Two candidates were properly certified, and I believe the net left six. Yes, two were properly certified. So, were they required to go to the board, to a state board or local board, if the names were not certified? If they wanted relief from the certificates of nomination that were filed properly, they were required to avail themselves of section 10-8 and 10-10 of the election code. An electoral board would then have been constituted and could have held hearings, proceedings, on whether the outcome of the caucus, as reflected in those not certificates of nomination, was accurate or not. Right. Well, if we have to read the statute, we have to interpret the statute, the code, as it's written in its entirety. And for us to interpret the statute as written, how can we come to the conclusion that the election board, whatever type of election board it is, could consider anything that was not filed? In other words, were there any objections to any nominating papers? So, thank you, Your Honor. And that's what we were saying needed to have occurred. So, they couldn't have gone because they filed no objection of the nominating papers. Yes, yes. So, the procedure would be that first the certificates of nomination reflecting the outcome of the caucus are filed by the chairman of the party. That happened. He certified two individuals. The six plaintiffs here would have, should have, filed an objection under section 10-8 of the election code within the, within five days of the last day for the filing of the certificates of nomination. And that would have been in mid December. They decided to come to court rather than file objections. They should have filed objections that then would have vested authority in first an electoral board. And if they did not like that outcome, then to the circuit court. But you're correct. No objections were filed. And so, therefore, they have, they've missed their opportunity to vindicate their rights. Let me ask you this question. I'm switching gears a bit. Is Vishian in a different position than the others here? And if so, why? And if not, why not? Yes, he is, he slightly. In so far as he is, he is a candidate who was added where the party had already nominated a candidate. He is different than the other plaintiffs. The other plaintiffs were added by the trial court to fill slots for which there were not other nominees. But that brings me to the point we talked about earlier as to why a party cannot nominate more than one individual, no matter what. And you could see what might happen. I mean, a party could easily nominate several candidates for one particular office, perhaps to try to give themselves a better chance of victory or who knows what. But yes, he is, in that sense, in a slightly different posture than the other plaintiffs. But then also, if you've had the opportunity to read our memoranda, he's clearly the ringleader in a very factual basis and has shown himself to be a kind of a classically disgruntled candidate, but also one who was formerly the chair of the party and who clearly knows how to run a caucus. And he saw the logistical issue that was presented by COVID-19 this year and took advantage of that. Okay, I have a few more questions, and I hate to keep you, but the plaintiffs made a motion to amend their complaint to add Santucci as a defendant. Did the court ever rule on that? The court did, Your Honor. Santucci and Mr. Roche, the other assessor candidate, were added as defendants after the evidentiary hearing in the trial court, the motion was made. But the motion was granted after, or it was formalized and then granted after the notice of appeal, in this case, had already been filed. So I have a real question about whether or not the trial court would even have the jurisdiction to make such a ruling. It sort of rises or falls with our overall contention that the trial court was wrong not to have dismissed the case earlier for failure to add these individuals as necessary defendants, as the plaintiffs and the court were aware of this argument on December the 6th, when we filed our briefs. I couldn't find that, so thanks for clearing that up. You rely heavily on the Somer case with respect to the Zoom calls and the procedure. But that case is a little different here than the case here, because here there was really no notification to the public for this Zoom hearing as there was in the Somer case, correct? Well, the notice that was provided to the township clerk did not also contain a Zoom component, that is true. And the testimony was back at the time that it was unclear what was going to be able to be possible on the December 1st caucus date. I mean, at the notice was required to have been filed. So Zoom notice was not provided particularly initially. However, I think the record does reflect that amongst the township Republican leaders, the Zoom piece was discussed ahead of time and was disseminated via... To the Republican leaders, but not to the public. Right, that is correct. The public would, had they wanted to participate, and some did, would have arrived at the appointed date and time. And they would then have been provided with the proposed rules of procedure and the Zoom call-in and telephone call-in. But Mr. Breen wanted to participate, but he had no access. So how fair was that to him? Oh, yes, Mr. Breen. Yeah, well, he was given the same access that anyone else would have been. And forgive me, I believe he did check in, but he would have been able to call in to participate, just the same as everyone else. But the Sommer case was a hybrid, wasn't it? So Sommer, yes, Sommer involved... The basis for the case was that there was a dispute as to whether or not a primary rather than a caucus could be forced because of COVID. That was it. And the appellate court said, no, you cannot force a primary where the party organization wants to have a caucus. Instead, you cannot force them to do otherwise. But if you do do a caucus, you have to provide for the ability for individuals to participate electronically if they so choose. Now, one final question. Mr. Ruhl had indicated that I think it was Breen couldn't enter the fray, if you will, because he didn't inform him first. Where does it state anywhere that the potential candidate would be prohibited from entering unless they were informed, they informed the chair first? I'm not aware of that portion of... It might have been Urban. Okay. So if that refers to a candidate named Mr. Urban or an individual named Mr. Urban, his criticism was that... And there's a general theme of a criticism that people who wanted to be candidates, and if that's what you mean by enter the fray, needed to notify or file a sort of notice certificate well prior to the actual caucus itself, that is contained in the caucus rules. And it's not uncommon in township proceedings. And what occurs and what Mr. Vishian or any of the plaintiffs could have done had they elected to participate is they could have moved to amend the caucus rules so that candidates who presented their credentials or their notice on the night of the caucus are permitted to run in the caucus. So the requirement was in the rules, but then those rules could have, and commonly are sometimes amended to allow others to enter the fray without having filed a pre-notification. Okay, great. Thank you for that answer. And you're right, Justice McLaren, it was not... It was Urban looking at... I agree. Thank you. Thank you. I have no further questions, Justice McLaren. Thank you. Mr. Fogarty, would you expound on the issue relating to the town clerk refusing to advise that Mr. Ruhle had filed a certification of candidates to Mr. Vishian? Well, yes, I will. I will. The direction that I'm going in is did it have any effect on Mr. Vishian's ability to file an objection before the electoral board? In other words, was this alleged fraud something that precluded his exhaustion of his administrative remedies? Sure, yes. Understood, Your Honor. Well, I don't... I have to take Mr. Vishian's testimony for, and we all do, for what it is. Our position, though, is that it's self-serving and not necessarily truthfully what occurred. Mr... To the extent that the... Truly, that the names of the certified individuals were unknown to Mr. Vishian, I suppose his objection or the plaintiff's objections would not necessarily have named, if they were somehow unable to determine the names of the certified individuals, they'd not have been named, but they nonetheless should have been directed to the township clerk. So, in essence, their ability to utilize Section 10-8 shouldn't have been hampered, but to the extent that they somehow didn't know who got nominated, it would have been dampened, I suppose. Would they have been able to file an objection with the electoral board indicating that there was no certification filed within the required 113 to 106 days before the election and ask that the electoral board indicate that there was to be no certification and no candidates listed? Yes, their objection would have been, should have been filed with the township clerk and then the filing of the township with the township clerk then sets off the process for convening the We were all duly nominated and were the true winners of this caucus. Is there an instance where Mandamus might apply insofar as whether or not Mr. Rule did in fact file, pursuant to statute, a certificate with the town clerk? So, I'm not aware of any circumstance where a Mandamus action could apply as to Mr. Rule. Mr. Rule is the chairman of the local party. He is not an official. Any Mandamus action would have to have been directed to the township clerk. The township clerk doesn't file the certification of the slate. Mr. Rule does. Mr. Rule does. That's correct. And my point is he is supposed to file it with the clerk between 113 and 106 days, correct? That is correct. And if he doesn't do that, pursuant to statute, do you think that some citizen might have the opportunity to go to court and have a Mandamus issued to indicate that whatever certificate, if any, that Mr. Rule has, he should file it with the clerk? I have not seen that to be the case, your honor. You're telling me that in order, my point is it's very difficult to prove a negative. So, I will assume that when you said that, you meant that there is in fact no case at all relating to this issue because no chairman or no representative has ever failed to file a certificate. Or are you saying in the alternative that yes, there is a case where someone failed to file and a Mandamus was sought and was refused? I'm saying the former and not the latter. Okay. I have no further questions. Justice Jorgensen, do you have any questions? One follow-up. If Mr. Vissian had been told by the clerk there was no filing, couldn't he rely on that? And if there's no filing, where's his basis to go to the board, electoral board? So, if there is no filing, he still, he retains his basis by, I mean, he did file some paperwork with the township. I'm sorry, which he? Which he are you referring to? I'm sorry, Mr. Vissian. Mr. Vissian. Yes. So, he packages his whatever certificates of domination he believes are appropriate into an objection as to the regular caucus results, whether he has them or not, and proceeds in that fashion. Okay. I have nothing else. Thank you. Thank you. Thank you. No, we're not done yet. Justice Shostak, do you have any other questions? No, I have no further questions. Thank you. I think I have one more question, and that is, is that would Mr. Vissian, if he was told on the 105th day before the election that the clerk did not have a filing of a certificate, would Mr. Vissian have the reasonable belief that he could file an objection with the electoral board indicating that the certificate was not filed and that the certificate from his organization should be considered the valid one, and then there wouldn't be a problem with a conflict in violation of the statute relating to the two assessor candidates? Okay. So, the filing period of the 106th and the 113th days before the election is the period for the chairman of the party organization to file the certificates of nomination, and Mr. Vissian would get five business days after the last day for filing. So, in this case, the documents were on file on the very first day for filing. Mr. Vissian would have had then two weeks, essentially, to file his objection. And so, if the filing period has run, that one week period, and Mr. Vissian has requested any certificates of nomination and is the certificates of nomination that he generated, if he truly believed that the caucus that he conducted was the proper caucus. I have no further questions. Justice Jorgenson? Nothing additional. Thank you. Thank you. Justice Shostak? No, thank you. Thank you. I'm sure you'll have an opportunity to make rebuttal. Very good. Thank you. Mr. Seckler, you may proceed. Thank you. Good afternoon, and may it please the court. I'm Ross Seckler on behalf of Nathaniel Siffel in his official capacity as the township clerk and the local election official in and for Naperville Township. Here, it is clear from our brief as well as the response to the motion. With the clerk here is a very different and nuanced interest in this appeal, obviously, from that of the Mr. Rule and the other appellant. Here, this case is about, for the township clerk, about the unprecedented order by the circuit court that mandates the township clerk to certify and recognize, again, the two different dominating events, these two caucuses, two, one caucus, one grump caucus, whatever it is, from the same party, and that it ordered the clerk, without any action by the party, to certify all of the candidates for the ballot. This argument that was generally unresponded to in the briefings boils down to the fact that the mandamus issued with respect to the township clerk from the circuit court requires the clerk to act as the local election official that is beyond his authority under the law, and the order is contrary to the rights that the plaintiffs have been entitled or are shown to have been entitled to by the record below. Respectfully, the circuit court's order is contrary to any legal precedence. The wholly new and unprecedented order is issued in error and constitutes an abuse of discretion. As a secondary note, we'll respond to the motion to dismiss that's pending that we filed a response to, but that boils down to that all of the allegations and insinuations that are raised in are really unsupported and unfounded, and most importantly, for the purposes of this appeal, they are completely irrelevant. Here, the main point and the key, this is a case about statutory interpretation, and as a general rule, most of the election code and any other relevant governing code for filing and becoming a candidate does not specify who files petitions. If you run for judge, for example, you go to Springfield, it doesn't matter if you're going to file your petitions in Springfield or if you have your brother or your sister go file it or your campaign manager or anyone else. One person can file it on behalf of a few people. It really doesn't matter. There's one exception to that general rule, and that's the township code, and filing township caucus paperwork is governed by section 45-20 of the township code, and that requires the township chair to do it, and as case law has interpreted that to be more as long as there's someone certified, and what certified to be able to actually say these are the results. I'm certifying what the results are here. I'm filing the paperwork. These are the legitimate results, and why do we why does the township code have that? To avoid the exact and most, as the circuit court observed, the most unusual situation we have here. This whole issue is actually asking what the caucus results here, and that's really what the litigant, the two other litigants are fighting about is whose caucus was legitimate, whose wasn't, and really that was never answered, and that's not a position that the clerk takes. The issue is that the circuit court's order essentially declares both nominating events to be valid, and that's in error. It doesn't matter if the parking lot one was valid, or if the one in the Zoom caucus was valid, or if neither were valid. The problem is that both were declared valid and without any basic precedent. Here the clerk is required to certify that certified to nominate a candidate under the township code, and the election code puts the clerk as the local election official in that position of apparent conformity as the gatekeeper, as Casewell talks about in Pate versus Wiseman or North versus Hinkle. So this the circuit court's order essentially makes the job of the local election official, and to function as the gatekeeper to the certification process nearly impossible, because any person who comes in to file any sort of paperwork, whether they have authority to do it or not, now the clerk has no ability to actually deny that certification. Here with Mandamus was is not there was no right to the relief sauce, and the clear authority of the Mandamus order is way beyond the authority of the of the public official, the township clerk, to be able to even to have complied with it. Respectfully, the decision was erroneous and arbitrary and against the manifest weight of the evidence. Thank you. Um, Mr. Justice Jorgensen, do you have any questions? Yes, counsel, are you saying then that the clerk must either accept in its totality one caucus result or the other caucus result, but not both? That would that would generally be correct, because it would be the it would be there really should only be one caucus result, one valid caucus result, and that would be usually that would be filed by the chair. The certification paperwork would be filed by the chair. Yeah, yeah, true. But what your position was that you you argued that there can't be both can't be valid. Correct. Which is what the basically what the trial court said. Right, exactly. So your position then would be one or the other in its entirety should be certified. Or neither. If the circuit court had the ability, if it had jurisdiction, without wading into that, it would be able to declare both of the caucuses or proposed um, but that obviously was not an option. That's just that the court. Okay. All right. I have no other questions. Justice McClaren. Thank you. Thank you, Justice Shostak. Do you have any questions? Yes, just briefly. The motion to strike that was filed by the plaintiffs concerning your client. Um, they indicated that her role was nominal, I think, as you set out here. You disagree that her role is nominal. She's the gatekeeper, as you said, correct? Correct. The clerk as the local election official and as the in the cases we cited and explained both in our in the memorandum in lieu of brief and as well as the response to the motion. There's many situations where the clerk is put in the position of having to decide whether or not and or which candidates are the ones to be certified and whether they can be validly certified to the ballot. You indicated that the court did something that really has never been done on just let everybody in. Do you have a position as I've asked um your um uh the other counsel do you have a position as to whether or not Mr. Bishan is potentially in a different position than the rest? Um, I don't have overlap, certainly do with the trustees, but you know with the assessors you have the overlap. Is there anyone else in that position other than Mr. Bishan? Uh that's that is correct and Mr. Bishan is the only one where now there are two Republican candidates for one position uh on the ballot um and that's so that he is in a different position but I think the for the clerk's purposes it's more just the the following the actual procedure for which who is actually validly nominated so that's the point is I very well taken I do agree that Mr. Bishan is it appears to be in a different position than all the other candidates uh Republican candidates here but the issue is more in the clerk's perspective is to if there was one nominating certification filed by the township chair and then another group tried to file another a different certification which included Mr. Bishan's and so what one of those forms only one of those packets can be bailed that's um that's reflecting the actual results of yes reflecting the results of the caucus but I do I mean it's clear though that Mr. Bishan is in a different position than the others in that there are for a general election April consolidated election ballots there are two Republican candidates on there it's been so it's more like a primary and a general election which is just unprecedented and is it your position then whether or not the court properly um denied the writ or um that it is an abuse of discretion and not against the weight of the evidence I would it because as the brief gets into the standard is uh has been debated by uh the appellate court for uh a while and so um our position would be that it would be both in the eyes under any standard of liberty whether abuse of discretion and or against the manifest weight of the evidence or and just for certain legal applications clearly erroneous under any uh applicable standard of review the circuit court's uh order uh warrants reversal okay thank you very much I have no further questions justice McClaren thank you Mr. Seckler how many parties political parties are uh exist in this state there are in this state statewide I believe that there are two established political parties statewide um certain places I know that the Green Party and the Libertarian Party I think it's qualified and I'm not sure if in the last in November if the Wilson Party was able to qualify for established party status but that uh it would be the Republican and the Democratic Party so there are not two Republican parties in the state is that correct that is correct and should we take judicial notice that Mr. Rule is in Republican Party or is that a question of fact to be determined by just Judge McCluskey no I I think you could take judicial notice of that in addition I believe it's admitted in the pleadings and in it on the basis of clearing the record I don't I don't think that that is a contested issue so insofar as your client is concerned as a gatekeeper uh she were to determine that Mr. Rule was the appropriate representative of the appropriate party does she have a ministerial duty to receive uh the certifications of any other group claiming to be a Republican group or party no the the clerk would not have any duty and and on top of that actually would probably have more of a duty to deny certification from any other group or other supportive individual uh are there candidates who are not affiliated with a political party who filed nominating papers or candidacy and notifications with the town clerk it for this election uh no there were no new political party candidates or independent candidates but there I believe in four years ago there were at least one independent but I I'm not totally sure but no in this election no there are no other independents or new so in this election uh your client was required to determine if uh appropriate certificates were filed between the 113th and 106 days before the election is that correct yes and if she had received a certificate that was not within that time frame did she have a duty to uh accept and file those papers uh if it was not in those in that time frame I don't believe so I think that that would be uh one of the functions correct they would as what most likely happen is the person would be able to try to submit it and what happens in these cases is that they some type of notice will go out to the filer saying you filed too late or you're not the proper party to be to be to many of the mandamus first clerk uh cases that we talk about in the second uh would you be willing to say that there is a philosophical and a objective problem with having certifications from two parties especially when there is a conflict between the two slates um yeah in other words is the fact that there are two parties seeking to file slates is a philosophical problem when supposedly the public policy enunciated by the statutes indicates that there's only supposed to be one republican slate that's and that's exactly the problem is that um what what this symbolized what the court's order allows for is you know undeterred factionalism so that I can declare myself the true representative of the republican party or whatever party and because I didn't like the results I can go and file my own try and file my own paperwork and I think that's exactly what the statute is trying to prevent and the objective is reality is the fact that in this particular case at least in one instance there was an overlap or a redundancy and therefore there was a direct violation of the statute relating to the fact that there's only supposed to be one a designated candidate from a particular uh party that's exactly that's exactly I have no further questions uh justice georgia vinson do you have any questions I do not thank you thank you uh justice shostik do you have any further questions no further questions thank you thank you now we come to miss craft heifer is that how you pronounce your name yes craft the fur good thank you you may proceed ma'am thank you good afternoon may it please the court carry on craft the fur on behalf of the plaintiff's apologies candidates and I think I'd like to start with an analogy which while not perfect demonstrates some of the flaws in the defendant's argument so let's say that you decide to run for illinois supreme court and your paperwork is perfect and you go to the state board of elections during the one week you have to file and hand in your paperwork and you take it to the secretary there for processing and later you hear that the secretary didn't process your paperwork but instead took it out to his car and told people he wasn't going to process it because he doesn't want you to run because you're running against the sister-in-law so you try to call the secretary to see if it's true and he won't take your calls and you call the state board of elections and they won't return your calls so what do you do you file an action in mandamus to compel the secretary to file your paperwork and bring it in for the ministerial processing and to compel the state board of elections to certify your name and of course all this has to happen very quickly because there's such quick timelines under the election code so when you file a lawsuit the secretary says wait you can't file mandamus action against me because you didn't file a challenge to the other candidates who are running and that's a prerequisite and by the way your case should be dismissed because you didn't name them as defendants and they should all be necessary parties and then the state board of elections also starts arguing well you know you shouldn't be on the ballot because if they're required to precedence because then we're going to have to certify anyone who tries to file paperwork in in the cars of our staff members even though like that's not really the factual instance now that's somewhat of a bizarre fact pattern but the case you have before you is a bizarre fact pattern but to the respect that the political party chairman is arguing that the candidates were required to file an objection to others before filing an action in mandamus then the at least five reasons first of all let's just clarify that it's a bit of a ruse to claim that the candidates are sore losers that's a mischaracterization and it's unfair to say that the parking lot caucus was a rump caucus i can tell from the questions the panel has asked so far but you can tell that naperville township has seven offices to be filled at the april election and it's not a situation where there were two slates of seven candidates pitted against each other the zoom caucus to an extent was a failure because it only slated two candidates and rule testified at trial he was just unaware that there were any other candidates in the election so the irony that we have here is we have the republican party chairman arguing they're arguing there should only be two republican candidates on the ballot instead of a full slate now the candidates didn't know at the time they filed the lawsuit which was during that filing period for paperwork that any other paperwork had been filed so the first one the defendant's argument is that the litigation was not instituted to remove candidates from the ballot it was to compel the chair to file the paperwork and to compel the township clerk to certify the candidates the second flaw in their argument is that the electoral board could not have granted them the relief that they sought even if the candidates successfully challenged the paperwork for the nomination candidates that result would be that those candidates wouldn't be on the ballot not that the plaintiffs would be on the ballot because an electoral board would have been completely without the power to award that relief or to compel the chairman to file the proper caucus paperwork third in rules reply and this goes to one of the questions asked by justice jorgensen he cites section 10-10 regarding the scope of an electoral board's powers and it's really important to look at what that language is because the courts have always held that the electoral board's powers are limited and strictly related to what the statute says and section 10-10 is a long statute but in the second to last paragraph in pertinent part it says that the electoral board shall take up the question as to whether or not in the case of the certificate of nomination in question it accurately represents the decision of the caucus issuing it here there was no question that the paperwork submitted by rule that he filed but that we found out about much later that it accurately represented the caucus issuing it it did it accurately represented what happened to the zoom caucus our issue was that the caucus was not legal and it was not conducted fairly or properly and in fact the trial court found that it was conducted in bad faith so there's no provision of the statute that allows an electoral board to make a decision between which caucus is lawful and to compel the chairman of a political party to submit paperwork of course if rule takes the position that all nomination papers are valid unless there's an objection we ultimately did know our candidates filed paperwork because we didn't want to have them file outside of that narrow window so that they would have have an issue saying well you never filed anything on time they filed their paperwork and no one filed an either saying that their caucus wasn't valid and then it's also a little disingenuous for the defendants to argue that the candidates should have filed that paperwork when the undisputed record before the trial court showed that rule wouldn't meet with the parties to tell him what he was doing the township clerk would not return phone calls to the candidates and when the candidates did contact naperville township clerk staff either intentionally or unintentionally they were told nothing had been filed but there was they had no basis to file an objection one of the things justice mclaren had asked was well couldn't they then found objection to kind of compel somebody to do that no that's not proper under 10-10 10-10 requires you to challenge something that has been filed not to compel something to be filed now let's talk for a moment about the flaws with the caucus the first flaw was that there's no provision of law that says that you can't do that electronically now rule says well our caucus was lawful because it followed the township code but that's not borne out by the record because the caucus did not occur at the location specified in the notice at least the zoom caucus didn't that's why we're saying ours was actually the true caucus of the republican party he was trying to hold it by zoom but nothing in the election code or township code says that you can't do that electronically so they argue well there's no law prohibiting it but but the election code prescribes regulations that you have to follow to conduct an election not things that you don't do uh to hold an election so for example there's nothing in the law that says well we can't have a polling place in michigan but the law says the polling places have to be in illinois so just because it doesn't say you can't do something doesn't necessarily make it legal and further even if this court decides that perhaps remote practices are lawful and permissible notwithstanding that the general assembly has not really navigated how we're going to handle elections in the zoom world there still has to be integrity in the election process so here the 12th court found the practice was held in bad faith that factual finding is entitled a significant deference but there were safeguards here there were problems with the rules that were adopted they didn't know who participated in the caucus first of all rule said well all 57 people that filed affidavits those were the ones in the caucus and we could tell because we saw either their names or their pictures on zoom but we know from the situation in the lake county circuit court where the porn hackers signed into the court up there people can put whatever name they want when you sign into so that's a fundamental problem to an election and that was also borne out by the testimony because we had one voter testified that he participated from scottsdale arizona he never signed an affidavit we had another person testify that he also participated and never signed an affidavit we had evidence put on by the defendants that gary vichian actually participated in the zoom caucus but he testified no he didn't he actually was in the parking lot caucus at the time so we don't know who participated in that caucus we don't know there was no integrity to that to that process at all the rules also weren't distributed to the public ahead of time they were given out to friends and family two days ahead of time and they had these rules saying that you had to take action a month earlier by november 6th if you wanted to declare that you wanted to be a candidate so the judge was appropriate in issuing the ruling that he did with respect to the release it is odd it is odd and it was actually suggested by me because i don't think that the bad action of a political party chairman should bear out the right of the public to have choices at an election and when i made that suggestion at the trial court both all the parties had the ability to respond and nobody argued before the trial court that the release was inappropriate or unlawful now i have 51 more seconds to go so uh i've lost her i can't hear her at all well she her the her tile indicates that she's on mute oh gosh i'm sorry okay i don't know what happened what was the last thing you heard me say no one objected um when you said or when there was a suggestion of putting all names on the ballot okay and i just wanted to conclude with the issues about the local election official not having the jurisdiction to prosecute the appeal his role should be a nominal role the arguments that he made in his appeal were not articulated before the trial court nobody challenged the remedy that the trial court was considering there although he did ask about it and we we were prejudiced by his late joining of the appeal as an apollon where we thought he was going to be an appellee when we agreed to expedited consideration on the briefing schedule here i think my time is up i'm happy to entertain any questions thank you justice jorgensen do you have any questions uh i do council you indicated that the uh section 1010 of the code would say that you only use that when you want to challenge the outcome of a caucus i understood you to say that is that correct well the language actually says when you're challenging the certificate of nomination or nomination papers if they're if they're valid and whether they actually represent the accuracy like a question of whether it represents accurately the decision of the of what it says that is still the remedy when you are challenging the caucus process how do you respond to that it's not what the statute says the statute clearly says it's talking about caucus nomination papers and that and here there wasn't a chance to caucus nomination papers because we we believe i'm sorry excuse me could you start over again i i lost a couple of your words sir so the statute doesn't say that the statute actually says that you file an objection to the the nomination papers of the caucus challenging whether or not they accurately represent the caucus well guess what the papers that they filed represented that zoom caucus we're just saying the zoom caucus was not lawfully conducted and there's not a basis for the electoral board to say you know what you're right that one wasn't this other caucus was but we're going to make someone else file nomination papers electoral boards are strictly statutory and have very narrow functions or quasi-adjudicative bodies that only come into existence upon the filing of an objection so here the proper remedy was mandamus is proper when public officials fail or refuse to comply with requirements imposed upon them by statutes then the courts may compel them to do that we would submit that the political party chairman is a public official appropriately subject to mandamus the complaint filed in this matter in the action for mandamus list is seeking mandamus both against the party chairman because at that point they didn't when when the lawsuit was filed they didn't know that he had filed other candidates nomination papers so they were they thought they held the true caucus and they were was only when the clock was ticking and they realized he wasn't going to do that that they found their own nomination papers you suggested that in the trial court no one objected to the suggestion that the remedy be put all the candidates including then two assessor candidates on the ballot so are you now arguing at oral argument that that was a waiver of raising that yes because that was made and i i've made that argument when when the judge said well what what do i do with this i said one possibility is is to put all the candidates on the ballot because first of all the other rights that sometimes we forget about in these cases they're not just candidates but they're the voters so the voters here shouldn't be disenfranchised by the the bad and you know the other candidates really shouldn't be here and and i made my closing argument and then then judge mccluskey specifically asked the other parties about that and they said well it's not really unique we don't really know about that but but they didn't object to it and then mr bond on behalf of the new page county clerk said it was something that could actually logistically be configured on the on the ballot what about the argument that the two um other candidates on this i'll call them the zoom candidates had no opportunity to object to that remedy particularly the assessor candidate well that's true they didn't but so how can it be a waiver to against them well it's not a waiver against them it's a waiver about about the party saying that but again going back to my analogy about hey you're running for supreme court but do these other people have a vote and whether or not you get to have ballot access we weren't trying to take them off the ballot at any point after we found that they were certified to the ballot there was not an argument that they should be removed from the ballot after that so as far as the necessary parties first of all the record shows that assessor candidate matt rache was listed as a witness and disclosed three days before trial he was present at the entire hearing as a witness he never made a motion to intervene in the proceedings of the party so it can't be argued that he didn't know about it i mean he was actually present for the whole the whole hearing um and i don't believe they were necessary ultimately necessary parties because when the original action was filed there was an injunction count seeking to enjoin the chairman from certifying other names but the plaintiffs didn't know when they filed their complaint the other people had already been certified so there was never an attempt once they learned that other candidates were on the ballot to say that they should not be on the ballot so because the issue was moot the the sadly because of the actions of the defendants and telling people that who were actively seeking this information that there were other candidates filed the prompts of the complaints that were seeking injunctive relief were moot at the time they were filed because the acts that the candidates were seeking to enjoin which would have been the certification of other candidates had already occurred right all right all right so you those two counts were um really had no effect yes all right i have no other questions justice mclaren thank you thank you uh justice shastik do you have any questions justice shastik do you have any questions yes i'm sorry yes so you're saying you're not objecting to the nominating papers not being filed you're you're objecting to the zoom call not being proper is that what you're saying yes and section 10-10 of the election code says if you want to challenge the paperwork is not properly representing the caucus and you file an objection but that paperwork did accurately represent the caucus we just don't believe that was legal but 10-10 also talks about the decision of the caucus or the convention correct no well it says it says specifically let's see whether or not in the case of the certificate of nomination in question it represents accurately the decision of the caucus issuing it it doesn't say you know anything about the underlying conduct of the caucus it just it think about it most electoral boards consider only challenges to paperwork the paperwork before them does it meet up with the statutory criteria for what candidates have to do to gain ballot access but not all of them do that doesn't preclude somebody from objecting to the caucus does it it wouldn't give an electoral board jurisdiction to consider that that issue well how about the summer case so the summer's case all right that was that case was brought prior prior to the election cycle there were local residents who who wanted to have the party chairman compelled to have a primary instead of a caucus because of covid that's what that's what that case is about so that wasn't they weren't it was kind of like an anticipatory trying to avoid problems that might come up with people having a but they weren't challenging the certification or the paperwork they were challenging that the way it was proceeding either by caucus or any other way correct yes and they were challenging it before a court not before an electoral board is this in a different position than the others and if so why and if not why not well he is for several reasons first he's a well he was the former township of former township supervisor of naperville township and he was also the long-term former republican chairman of the party so he knew why does that matter well it mattered because he knew what was required to hold a lawful caucus which is why he was objecting at that night is to the zoom caucus because will testified he never sought legal advice he looked at the state board of elections caucus guide and that actually has a disclaimer in it that says from the state board of elections we don't know if you can hold the zoom caucus or not so you better check with a lawyer but will testify that he didn't he didn't check with a lawyer so when when vician got there and knew how things should proceed he knew they could adopt different rules that night so that's why in the parking lot they did adopt different rules that weren't that there was no provision that that said you could hold a caucus somewhere other in some other way other than what's articulated in the township code which is that he has to proceed at the place in the notice that's provided there was never any notice provided to the public that this was going to be a zoom caucus and will testify he never even gave notice to the township clerk that he wasn't going to hold it in person at the township but since rule submitted nomination papers for the position of assessor why wouldn't vician have had to file his objection with the board of elections regardless of whether he thought that the the zoom caucus was was proper because then that result would have been 10 9 and 10 10 wouldn't he have to file an objection not if the relief but that wouldn't have given the relief that he wanted which was for himself to be listed on the ballot yeah so there's so okay so let's so one of two things could have happened first of all he he could he would have had to argue that that that rules paperwork didn't actually match what happened at rules caucus and that i mean that they did accurately represent what happened at rules caucus second even if somehow he did convince electoral board that that um caucus was improper and that uh mr roush they shouldn't be on the ballot it wouldn't have resulted in the relief that mr vician would have himself listed on the ballot the the electoral board could not have ordered that remedy could not have ordered what remedy the remedy of putting another candidate on the ballot so for example if you go back to my original that's correct that's correct yeah um but so so vician didn't file didn't appeal this because he was happy that he was on the ballot with another republican in a in this election but so he just put his all his eggs in one basket is what you're telling me he didn't he also wasn't that right he didn't but remember he also didn't know that there was a file i mean that there was actually active deception by rules to meet with them to tell him he filed the caucus documentation then ultimately a trial it was shown the people filed their nomination papers the very opening hour with the opening bell and not only did they not tell vician that republicans just found they they withheld from him that the democrats have filed until later so they they didn't how is there nowhere to look and is there nowhere to look and see if anybody has filed not when the people who accept the filing are lying to you which is what the record here showed we were trying to contact the neighborhood township clerk's office to find out what happened has anyone filed oh no nobody has filed nobody has filed okay so if there is the local election officials office is telling you no one has filed i don't know where you could go to to find that out they were trying to they didn't want to have to file this lawsuit hmm and that's i mean that's all part of the reason i believe that judge mccluskey found that this was all this was in bad faith there's no caucus but but by the same token i don't think the other candidates should be be penalized by the the bad faith actions of the party chair and of the clerk's office and i you know and actually to be fair i don't know that the neighborhood clerk's office did intentionally misrepresented it but they misrepresented it either negligently they didn't know or whatever but there was no countervailing evidence by anybody that said oh no we told the party sometimes so they could have filed injection that wasn't in the record okay um but you're you're of the position that it's proper to have two from the party on the ballot at this point i believe that under the court's equitable powers in this strange situation which is unlikely ever to repeat itself that it's an appropriate remedy especially when nobody objected before the trial court and it was just a very bizarre fact pattern i don't think the stack pattern will repeat itself i hope that the general assembly will now that they're meeting clarify the law with respect to this we do need more guidance on electronic processes if this is going to be the wave of the future and i think under these unusual circumstances it's an appropriate remedy because it also it gives the voters the ability to decide you file the motion to strike the clerk cycle's appeal saying her role is nominal is it really nominal in a mandamus proceeding yes it is it is because a whole mandamus proceeding is generally predicated upon the many ministerial functions of a local election official so while mr sheckler just order or just argued right now that there's this there's this enhanced gatekeeping function and there is some support in illinois law for local election officials performing a gate keeping function i don't think we want local election officials to aggressively uh disenfranchise people for things they're outside of the four corners of the record so i mean for example in the case of north versus hinkle we had a local election official who said i can't certify someone in this instance because i can't tell what office they're running for from the face of the nomination papers and the court said you're right when it's that blatant of an error you have the ability to not certify somebody for for office but i don't think we want a situation where we are having local election officials try to resolve facts outside of of the record to determine what should happen so i would disagree with what mr sheckler argued in that if i would say if somebody comes before you and they file a document you have to take it you might not have to certify them but you should accept the filing and and process it if it appears on its face to comply with uh with with the documents here i mean are we really saying that if a political party chairman's wife brings in the papers that that's a flaw in the documents that the local election official should bounce off that that might be a factor outside of the record that they know this isn't the chairman's the chairman's wife but if you have two competing sets of documents and you don't know which one is valid or not i think it is a ministerial function that unless somebody challenges it you need to proceed to certify i think it would be a real danger to expand the role of the local election official to something beyond a ministerial function which is processing and certifying the paperwork thank you no further questions thank you um this craft effort if there was a group another group in the parking lot who after registering sometime between 6 and 7 p.m on the day in question and they decided that because they were locked out that they would go to the mcdonald's down the block and they would hold their uh caucus on their own and they would set up their own rules in this particular caucus there were three people and they all voted that the three people should be placed on the ballot and they they did the same thing that your clients did would there be a problem with that yes the first problem would be that they didn't comply with the township code because the township code requires that the chairman give notice of where the caucus is to occur so if they held a caucus at mcdonald's that wasn't the location on the notice that was the same problem here that mr rule's caucus had he didn't conduct a caucus where where the notice was published to well the public it was to occur how close do you have to be you say your caucus was in the parking lot it wasn't in the building if it wasn't in the building how could it qualify any more so than the mcdonald's down the street it was at the address located in the caucus notice there was nothing in the notice that said it was going to happen in the building and people did try to gain access in the building and they were locked out so if in fact there is an argument about a notice then it is in fact valid to lock the doors and leave the people outside and have a hearing with the people that you want inside because you supposedly haven't locked them out because they are at the address that you alleged was given in the notice so is there a problem with that yes there's a problem with that i mean the first fundamental problem is that a caucus is an election and anybody locked out from anything anyone who i will change the question and say that two groups were in the parking lot and the group that i am referring to were standing closer to the locked door than your group was standing to the locked door does it make any difference no that proximity wouldn't make a difference in that situation i think would also probably end up in court so we would have three parties representing the republican party or three groups representing the republican party and if these three candidates that were determined by this third party happen to have a conflict with your slate of candidates what would happen would they also be added no i think that the court would have to look at the totality of the situation about what happened in general at that caucus i don't think that necessarily anybody can just say they're the political party now it's interesting though because both the political party chairman and the township clerk have argued that because the caucus was not called to order by the chairman that in itself makes it not the republican party caucus but there's no requirement in the statute that it has to be convened by the uh the federal cause of order by the chairman of the political party and interestingly that's that's distinct from other statutes for example the section of the township code that says when you're having an annual town meeting it has to be the township clerk that calls it to order so when the general assembly wants to distinguish how how a political party calls a caucus they could have said the chairman has to call that to order but that's not what they said i mean there's and we have you know this long six and a half hour evidentiary hearing other things that came out was it didn't start mr rule didn't start his caucus at seven o'clock like specified in the notice his rule said they were going to wait till 7 15 but he testified it started at 708 this other group my group started actually the caucus shortly after seven o'clock they said let's let's get going here and they made a motion to start it and and rule said no we're having it inside they made a motion to override the decision of the chair they were trying to follow the parliamentary procedures uh that normally would be attendant to a public meeting like this is there a requirement that an electoral board actually certify or affirm the certificate that is filed by the proper representative there's not a requirement that an electoral board would do that that would be the role of the local election official they have to perform the certification to the local election authority which would have been the dupage county clerk well let's hypothecate and uh realize that if this had been your parties your clients had filed an objection with the electoral board and made all the allegations before the electoral board the electoral board would or would not have the authority to declare the caucus held by mr rule to be invalid and require another caucus in compliance with statute the electoral board doesn't have the power to do that under section 10-10 there it's a strictly limited statutory function that the electoral board performs and 10-10 specifically says it's related to determining the validity of the nomination papers I believe it relates to the validity of the certification does it not no it says whether or not in the case the certificate of nomination in question so that's you know the document filed by the caucus represents accurately the decision of the that the certificate filed by mr rule is not valid and they they invalidate it uh two things can happen I think one is another caucus has to be held or two there will be no slate filed by any entity representing the republican party now tell me if that logic is false so the only part of your statement that I disagree with is I do not believe they have the authority to order a new caucus to occur I didn't say they did I said that if they determine that the certificate is invalid then there would appear to be two forms of relief either the uh correct republican political party entity does it write another time or a second time or there is no certificate filed and there is no slate certified to the town clerk who then transfers it to the county clerk so the first option could not occur though because it cannot go back to have have another caucus occur because it's beyond the statutory filing deadline okay so instead of allegedly granting relief to all the various uh entities claiming to be the appropriate representative of the republican party then the only alternative uh if there was determined to be an invalidity was that there would be no slate at all that would be correct if it were before an electoral board okay and why wouldn't this be before an electoral board because because the electoral board didn't have the ability to grant the relief to the plaintiffs to put to cause the political party chairman to file the correct documentation and the reason for that is because why well because the because because the statutes don't recognize mr vision and his parking lot group as the proper republican group or entity no because the statute doesn't give the electoral board the ability to do anything other than rule on whether or not nomination papers are valid or not it doesn't give them since they're quasi-adjudicative they don't have the full breadth of relief that's available to the judiciary so they they couldn't say well someone outside of our proceeding they wouldn't even have jurisdictional limits to rule okay i have no further questions justice jorgenson do you have any questions i do not thank you justice shostak do you have any questions none thank you thank you okay mr fogarty you have five minutes please proceed very good thank you uh all very much uh i will be obviously brief um with regard to the ability of an electoral board under section 10-10 i it it is uh certainly possible that um where an objection is filed to township candidates that the board may find that none of them were where you would have vacancies in nomination that could then possibly be filled i am so with regard to the ability of an electoral board to not give the candidates here the relief that they are seeking i don't think that that is accurate and it depends upon the notion that somehow a party could have more than one caucus while council says we take no issue with the results of the zoom caucus well i think that's belied by the pleadings uh but you can't look at uh the republican party as validly having more than one caucus in any uh particular uh nominating situation so when 10-10 says the decision of the caucus that means the decision of the republican party uh in in that connection so um 10-10 is uh is valid and i think uh could have provided the appropriate uh relief that uh the plaintiffs were seeking um yeah additionally um what we really want to focus on is um the notion that um not only this decision was uh unprecedented and um and and and we think unfair under the circumstances um it's it's the it's the precedent where we are now going to allow uh disgruntled candidates to take up their election loss um directly to the circuit court in a township setting we are uh vitiating section 10-10 and uh we are um encouraging people to run secondly um if unchecked um you know uh take take a hypothetical of a caucus with a massive attendance let's say it's a caucus of a thousand people maybe two thousand uh there's a big ballroom rented in order to accommodate that caucus um and then let's say that caucus doesn't start at seven o'clock but let's say it starts a few minutes late um by the logic and the ruling of the trial court uh a splinter group a smaller group of individuals within that ballroom even let's say it's just 18 of them like the plaintiffs claim participated in their parking lot caucus could split off in a corner and hold their own caucus and then demand that uh the larger group recognize those results that of course makes no sense but that's exactly what happened in in the trial court so uh for those precedential reasons and also due to the reasons found in the record uh we ask that this case be reversed thank you thank you justice jargonson do you have any questions i do mr fogarty um council talks about um there being no objection to the proposed remedy by um judge mccloskey what do you say to a waiver argument i i i just i disagree uh i you know i i think it was maybe uh thrown out and as a portion of council's argument but uh in no way was that uh set forth in a manner that would uh require any sort of um uh any anything further i mean our position the entire the entirety of the litigation was that these individuals did not uh deserve to did not deserve did did not do what they needed to do to be on the ballot we opposed their inclusion onto the ballot from the get-go uh and just because a sort of uh side comment of um well they should just all be put on um made i maybe at closing after uh evidentiary hearing um i i does not constitute our clients waiving anything we filed the notice of appeal the day after the evidentiary hearing we we oppose this we oppose it in every in every uh in every instance but nonetheless you did not object or or suggest to the trial court that there's no basis for that there's no uh statutory authority to allow you to do that or anything to that um i i certainly did not rise and and make an objection uh but um we i think given the sort of totality obviously objected we uh so um uh so that that's what i will uh say to that okay yeah okay okay that's fair enough um the analogy you just uh talked about the grand ballroom where 18 people gather in the corner of the same ball and and begin a different caucus wouldn't it be fair to say in that analogy that those had an opportunity to participate in the larger caucus which is different from what was here oh just the same as here uh your honor uh yes the the the parking lot attendees had every ability and every right and in fact were encouraged to participate in the caucus with the larger group they simply refused they they uh mr rule told them explicitly go home get on zoom participate that way mr vician told his people don't go and there's no lack of opportunity to actually have participated how do i ignore the testimony that they were locked out of the date time and place uh in notice uh the the on the spot but i mean we ignored only that the trial court obviously had to have um uh no your honor i the the factual record uh showed that the um the idea that this would be a zoom caucus was uh known beforehand it was disseminated beforehand um mr vician had played an opportunity to present or to um prepare contrary rules i mean so this was sprung on no one so the idea that they were locked out is is not a is not a valid one no no there was there was not an ability to um well and obviously this was a measure that was put in place because of covid and so um so no they were not locked out um in in really any meaningful way aren't we bound by what the notice says uh yes um the and sure sure sure the the republican uh mr rules caucus uh abided by that notice it required individuals to come and to physically check in but not to congregate for their safety um so the the notice provided where and when folks were to appear and they did so um the and then that leads us to i mean so end of story there or that leads to the next question or the the argument that well you you can't conduct one of these things by zoom that was the centerpiece of the plaintiff's uh uh plaintiff's case well it's just not it's just not the the case however it's contrary to what one appellate court has said already and uh the summer the summer case yes summer um contrary to uh governor pritzker's executive order and uh it's contrary to the uh the cases that interpret the township code um cases that interpret the code that deal with the manner in which the code or manner in which an organization has to conduct its caucus um determines that uh or um determines that the uh those those details are um not mandatory they are they are directory um and in general township organizations are given uh great latitude in uh the manner in which they conduct their their caucus so you know so basically you're just suggesting that the concept of the notice is subject to change based on circumstances well um yes and yes and no our position is that the notice set forth um the starting the starting point um and that there is nothing in the uh rules or the law that would um that would forbid the use of an electronic uh supplement uh and in fact one appellate court explicitly said that the electronic supplement is to be uh used but that was a supplement that was not in place of correct uh that that is that is correct uh however it doesn't i i don't think that i don't think that negates the point okay anyway i i do appreciate your response um justice mcclaren i do not have any additional questions thank you thank you justice shostik do you have questions i have one question um when i asked um your opponent about vician um being in a different position and saying that you know rule had submitted nominating papers for mr roush for the position that vician wanted he never filed an objection with the state board or whatever elect board for um agency she she talked about she said that they were precluded or there was like they were tricked into it no one would tell them anything um they were hiding this what do you have to say to that i you know i i don't i i don't think that that's borne out by by by the record um below and you know a a foyer request is is all that is that all is required um as for you know when mr vician called or or got a call back etc um yeah i i just i i just don't think that it's accurate that he was somehow that he was somehow tricked about about these circumstances okay um basically that's all i have justice mcclaren thank you counsel mr clover do you said something to the effect that uh the caucus and your hypothetical were the same and um i'm curious as to if they're the same did um in your hypothetical the 18 people were actually in the room and participating and they were present they were so in essence they were online and in mr vician situation he was not present to the extent that he was online if was mr vician and his caucus participants refused access on zoom to your knowledge did they attempt to join the meeting so to speak so well um there was conflicting testimony as to whether mr vician had joined uh he said he did not uh i think another uh there was another indication uh there was another document of a person who believed that they saw him uh on on the caucus um mr mr urban who um was to be uh who was a witness who wanted to be a candidate i i don't believe he was part of mr uh vician's group he was on the caucus um i i don't have i'm not aware of any testimony at all that would say that any person who was in the parking lot caucus was somehow refused access to the zoom caucus the testimony was that uh mr rule told told the parking lot caucus to go home and get on zoom and mr vician said do not do you have a response to the analogy that was presented relating to filing petitions for a supreme court election yes where there is the idea that um uh at the election authority has uh done away with the the petitions i believe was that the was that the analogy you're referring to your honor yes yes um well so a couple of things it's it's a little bit of apples and oranges because um as candidates for uh for office you are in a different position than simply um uh there are clearly if uh someone is going to uh object to your papers um the um uh there's only one direction i mean the the idea would be to get you uh off the ballot whereas uh it's it's slightly different uh in in this circumstance um where the actual objectors could have been the plaintiffs as well in the if the issue was that somehow the election authority um uh lost the the candidate's papers somehow or absconded with them in uh in in some fashion then uh yeah and the objection wouldn't make wouldn't make sense and and uh there'd be needing to be some other type of a mandamus uh action uh brought uh i would think against the the election the uh electoral the the election authority um i i don't think the objection process works in that in that fashion would the analogy be more accurate if uh mr a filed his nominating papers and then an objector claiming to be mr a being the identical entity that supposedly filed the papers was in fact the same entity and asked that they be removed is that analogy uh more appropriate in this case hmm well uh if well um in other words if mr a's real name is mr naperville republican party and they file a certificate and then somebody who claims to be mr naperville republican party moves to withdraw the that certification is there a conundrum here is there an inconsistency or a paradox there there's yes and and so my my original answer or as i was thinking about that was that well it would determine whether mr a was the same mr a who filed uh originally um yes and in in this case it's a um it's sort of the root of the problem um there is a big problem in um in in sort of uh requiring the electoral board to divine whether the second mr a is uh the mr a who has the authority to do anything uh so within a in the process of or in the situation where uh you're a candidate for the the supreme court let's say if you file your paperwork um and you decide you know what i i'd like to not run um what is practically required is uh a withdrawal that is signed and and notarized and that notary um that that notary gives confidence that that is indeed the right person who is purporting to withdraw this paperwork and and that's the that's that's the a big problem in this case your honor um you cannot have a situation where uh the mr regular republican has their caucus and mr unhappy republican runs up and says oh no um this is the real this is this is the real results and as you pointed out i mean it uh where might it end i mean there easily could be more splinters than just two groups um so for for the sake of of order and fairness um there there is one official recognized uh mr a in your hypothetical thank you i have no further questions justice jorgenson do you have any i do not thank you thank you justice shostak to you none thank you thank you it's been a attempt to get a disposition out i i'm asking this of the parties all and that is possibly even mary dixon uh what is the real deadline insofar as when this disposition needs to be published or filed thank you justice mclaren for asking this is mary dixon responding to your question on behalf of uh gene kasmeric who is the duke h kind of early voting started today with military and overseas balloting also occurring the ballot that is currently available to voters in that area is the ballot that was certified predicated judge mccluskey's order so candidates who are at issue in this case are on the back and voting is occurring on the ballot um applications as well are now for both else since that process continues they will also secure that particular um so there is an urgency in the court's uh entry of an order on an expedited basis of course if the court affirms judge mccluskey's order there is no change in the ballot if the dupage county clerk would ask to be entered is to order the clerk to suppress the results for candidates whose names appear on the ballot and who would be affected by that would take care of any voting that has already occurred to those particular candidates um what we would have to do if uh those if the court goes over ruled husky is reprogram ballot for all of dupage county it is a process that takes um three to four days uh so there that any ballot or during that period of time those votes would if the if the ballot were to change those uh results would be suppressed as well so in answer to your question um today would be great for an order but if not today soon you said three or four days because you were breaking up three or four days for the reprogramming i i believe what we've been told is that the reprogramming could occur by monday okay thank you uh thank you mr caplan will you close well first uh justice jorgensen do you have any questions relative to what i asked just now oh about the ballot i do not justice shostak no i think she answered the question that i had thank you uh mr you're welcome uh mr caplan uh please close out the proceedings